1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

CRYSTAL MCLARAN,

11

Plaintiff,

CASE NO. 3:20-cv-05395-JRC

12

v.

ORDER GRANTING MOTION TO
DISMISS

13

RANDY RAKEVICH, *et al*.,

14

Defendants.

15

16        This 42 U.S.C. § 1983 civil rights matter is before the Court on the parties' consent to

17   proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §

18   636(c)(1).

19        According to the allegations of the operative complaint (Dkt. 5), plaintiff is a co-owner of

20   a tree service company.  She brings claims against Randy Rakevich, a logging safety and health

21   inspector for the Washington State Department of Labor and Industries Division of Occupational

22   Safety and Health, as well as Rakevich's direct supervisor (Matt Ludwig) and another supervisor

23   (James Smith).

24

Plaintiff alleges that beginning April 27, 2017, defendant Rakevich investigated alleged safety complaints at plaintiff's company.  *See* Dkt. 5, at 6.  Plaintiff claims that defendant Rakevich used his position to sexually harass her, culminating in an incident in July 2017, when Rakevich met with plaintiff at a restaurant, where he allegedly implicitly propositioned plaintiff to engage in a sexual relationship with him or else he would impose fines on her business.  *See* Dkt. 5, at 9.   Plaintiff alleges that because she refused, Rakevich imposed an unusually high safety violation fine on her business.  And plaintiff further claims that defendants Ludwig and Smith—Rakevich's supervisors—were informed of this harassment and retaliation, yet refused to take any action.

Defendants have moved for dismissal of plaintiff's claims.  The motion to dismiss is granted for the following reasons.  First, defendant Ludwig is dismissed because plaintiff fails to allege facts showing that he personally participated in the alleged constitutional deprivations. Second, although plaintiff asserts that defendant Rakevich's alleged sexual harassment violated equal protection, and as alleged these actions would currently violate clearly established law, the law in the Ninth Circuit had not yet progressed to this point at the time these acts were allegedly committed.  Therefore, qualified immunity shields defendant Rakevich from liability for damages on plaintiff's equal protection claims.  Third, although plaintiff claims that Rakevich's actions also violated due process, plaintiff fails to allege plausible claims of denial of substantive and procedural due process because, among other things, she does not identify constitutionally protected interests.  Finally, the Court accepts plaintiff's concession and accordingly dismisses her claims for negligence and intentional infliction of emotional distress, her claims against officials in their official capacities for damages, and her claims against defendant Smith.

The only surviving claim is plaintiff's claim for injunctive relief against defendant Rakevich for violation of equal protection.  However, the Court also grants plaintiff leave to amend to include a state-law discrimination claim and to re-allege her claims against defendant Ludwig and her claims for violation of procedural due process and intentional infliction of emotional distress, as set forth below.

## BACKGROUND

Plaintiff brought this matter in April 2020.  Dkt. 1.  In the operative complaint (Dkt. 5), she alleges that beginning in April 2017, defendant Rakevich, a logging safety and health inspector for the State, conducted inspections and filed reports regarding alleged safety violations at plaintiff's tree service company.  *See* Dkt. 5, at 5–7.

Plaintiff asserts that on separate occasions beginning in April 2017, defendant Rakevich conducted inspections of plaintiff's logging company.  Dkt. 5, at 5.  Plaintiff asserts that there was no basis for the complaints that Rakevich was investigating and that Rakevich should have contacted her husband, who was listed as the owner of the company, not her.  *See* Dkt. 5, at 5–6, 9.  Then, on July 6, 2017, plaintiff alleges that defendant Rakevich, who had been forced to leave a prior position due to sexual misconduct, asked plaintiff to meet him at a fast food restaurant to sign paperwork to close an inspection.  Dkt. 5, at 7, 10.  Plaintiff claims that when he called her to ask her to meet with him, defendant Rakevich "sounded very nervous and was unable to explain the exact process."  Dkt. 5, at 7.  Plaintiff claims that she called defendant Ludwig— plaintiff's direct supervisor—to ask "if they were closing an inspection, would the[y] need to meet to sign anything?"  Dkt. 5, at 6.  Defendant Ludwig allegedly "told [plaintiff] that he couldn't think of anything they would need to sign, but expressed no further interest, and

1    initiated no action or investigation of any kind." Dkt. 5, at 6.

2         Plaintiff claims that during the meeting at the restaurant, defendant Rakevich implied that

3    he would attack her business unless she began a romantic/sexual relationship with him. Dkt. 5,

4    at 9. As evidence of why she understood defendant Rakevich to be propositioning her to enter a

5    sexual relationship with him, plaintiff cites defendant Rakevich's insistence on moving to a

6    secluded booth at the restaurant, his threatening to fine her, and his attempt to ingratiate himself

7    with her by saying, "I'm so soft-hearted, I'd never give out citations." Dkt. 5, at 8. Rakevich

8    also allegedly told plaintiff, "[I]t's too bad someone like you has to learn these things the hard

9    way. But that's up to you." Dkt. 5, at 9.

10        Four days later, according to plaintiff, defendant Rakevich called plaintiff and threatened

11   her with more violations. Dkt. 5, at 10. Plaintiff alleges that defendant Rakevich subsequently

12   fined her an unusually high amount for a first-time safety violation. Dkt. 5, at 10. Plaintiff

13   negotiated the fine down on appeal but does not allege that she pursued further options to

14   invalidate the fine. Then, she brought this action. *See* Dkt. 5, at 10.

15        Defendants have filed a motion to dismiss. Dkt. 14. Plaintiff has filed her response (Dkt.

16   20), defendants have filed a reply (Dkt. 21), and the matter is ripe for decision.

## DISCUSSION

### I. Legal Standard

19        Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss if the complaint

20   fails to state a claim upon which relief can be granted. A motion to dismiss focuses on the

21   allegations in the complaint. The Court examines whether plaintiff alleges sufficient facts that if

22   taken as true, entitle her to relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23

24

1    A complaint must contain "a short and plain statement of the claim showing that the

2    pleader is entitled to relief," "in order to 'give the defendant fair notice of what the . . . claim is

3    and the grounds upon which it rests[.]'" Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550

4    U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a motion

5    to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

6    to relief that is plausible on its face.'"  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

7    555).

8    When reviewing the motion to dismiss under Rule 12(b)(6), a court must accept as true

9    all factual allegations—but not legal conclusions.  *See Iqbal*, 556 U.S. at 678.  "When there are

10   well-pleaded factual allegations, a court should assume their veracity and then determine

11   whether they plausibly give rise to an entitlement to relief."  *Id.*

12   The Court has also considered whether to allow plaintiff leave to amend her complaint.

13   The decision whether to grant leave to amend rests within the discretion of the district court.

14   *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  "The court should

15   freely give leave when justice so requires" (Fed. R. Civ. P. 15(a)), and the Ninth Circuit

16   interprets this standard liberally.  *Cafasso*, 637 F.3d at 1058.

17   **II.  Conceded Claims**

18   As a preliminary matter, the Court notes that plaintiff concedes to the dismissal of certain

19   of her claims.  First, plaintiff "agree[s] to dismiss this action as to [d]efendant Smith." Dkt. 20,

20   at 17.  Second, plaintiff "voluntarily dismisses her negligence cause of action as [d]efendants

21   Rakevich and Lud[wig]'s actions and statements were intentional and calculated to cause harm."

22   Dkt. 20, at 17.  And third, plaintiff acknowledges that she cannot bring suit against officials in

23   their official capacities for damages under § 1983.  Dkt. 20, at 13.  Therefore, the Court

24

ORDER GRANTING MOTION TO DISMISS - 5

1    dismisses plaintiff's claims against defendants Smith, her negligence claims, and her claims to

2    the extent that she seeks damages from individuals in their official—rather than personal—

3    capacities.  The remainder of this Order addresses plaintiff's remaining claims against

4    defendants Ludwig and Rakevich.

5    **III.  Section 1983 Claims**

6        **A.  Legal Standard**

7    "Section 1983 'is not itself a source of substantive rights, but a method for vindicating

8    federal rights elsewhere conferred.'"  *Sampson v. Cty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir.

9    2020) (quoting *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)).  "In order to state a claim

10   under § 1983, a plaintiff must plausibly allege that 'she suffered the deprivation of a federally

11   protected right and that the alleged deprivation was committed by a person acting under color of

12   state law.'"  *Id.* (quoting *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1140 (9th

13   Cir. 2020)).

14   In addition, qualified immunity may shield an official from liability for damages.  Two

15   issues arise when addressing qualified immunity: "(1) whether there has been a violation of a

16   constitutional right; and (2) whether that right was clearly established at the time of the officer's

17   alleged misconduct."  *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir.

18   2016) (citation omitted).  Because qualified immunity is "an immunity from suit rather than a

19   mere defense to liability" (*Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (citation omitted)), the

20   Supreme Court has directed courts to resolve such questions "at the earliest stage of litigation

21   possible."  *A.D. v. California Highway Patrol*, 712 F.3d 446, 456 (9th Cir. 2013) (citations

22   omitted).  Thus, defendants can raise qualified immunity in a motion to dismiss, and district

23   courts should grant a motion to dismiss on qualified immunity grounds if the record supports

24

1  such a ruling.  *See id.*

2  **B.  Personal Participation:  defendant Ludwig**

3  Plaintiff alleges that defendant Ludwig, allegedly defendant Rakevich's direct supervisor,

4  is liable because he "was apprised by Plaintiff of [Rakevich's] harassment of and retaliation

5  against [plaintiff] and refused to take action . . . instead supporting [Rakevich.]"  Dkt. 5, at 3.

6  Defendants correctly move for dismissal of the claims against defendant Ludwig because

7  plaintiff has failed to allege facts adequate to show that defendant Ludwig personally

8  participated in the alleged constitutional violations.  *See* Dkt. 14, at 10.

9  "Liability under [§] 1983 arises only upon a showing of personal participation by the

10  defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the

11  supervisor participated in or directed the violations, or knew of the violations and failed to act to

12  prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor cannot be held

13  liable under § 1983 merely on the basis of supervisory liability.  *See Alaska v. EEOC*, 564 F.3d

14  1062, 1069 (9th Cir. 2009) (noting that although supervisory liability is inadequate, a claim of

15  sexual harassment in violation of the Equal Protection Clause can be brought against an

16  employer who "intentionally refus[ed] to redress the sexual harassment").

17  Here, plaintiff's only factual allegation regarding defendant Ludwig is that she called

18  Ludwig *before* the meeting with Rakevich at the restaurant and "asked, if they were closing an

19  inspection, would the[y] need to sign anything?"  Dkt. 5, at 7.  Ludwig allegedly told plaintiff

20  "that he couldn't think of anything they would need to sign, but expressed no further interest, and

21  initiated no action or investigation of any kind."  Dkt. 5, at 7.  Plaintiff does not allege that she

22  contacted Ludwig after Rakevich allegedly propositioned her at the restaurant or that she

23  otherwise made defendant Ludwig aware of her concerns.  Thus plaintiff's allegations are

24

inadequate to support her claims that defendant Ludwig personally participated in Rakevich's alleged deprivations of plaintiff's constitutional rights.  The Court dismisses the claims against defendant Ludwig; however, leave to amend may not be futile, so that the dismissal is with leave to amend.

The Court does not further address claims against Ludwig under § 1983 in this Order. The remainder of the § 1983 analysis focuses on claims against defendant Rakevich.

### C.  Equal Protection Claim against Rakevich

Plaintiff alleges that defendant Rakevich violated her right to equal protection because she was "singled out for discriminatory conduct based on her gender including sexual harassment, disparate treatment, and retaliation for refusing to engage in sexual conduct with Defendant Rakevich[.]"  Dkt. 5, at 3.  Defendants argue that plaintiff has failed to state a claim for violation of her right to equal protection because she has not identified any statute or classification singling her out for different treatment than others similarly situated.  Dkt. 14, at 9. They alternatively argue that qualified immunity shields defendant Rakevich from liability for damages.  Dkt. 14, at 11.  The Court agrees with the latter argument.

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'"  *Sampson*, 974 F.3d at 1023 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"Although the Supreme Court has never explicitly considered whether sexual harassment violates the Equal Protection Clause, it has long recognized that sex-based discrimination by state actors that does not serve important governmental objectives and is not substantially related to the achievement of those objectives is unconstitutional."  *Id.*  "Drawing on these equal

1    protection principles," the Ninth Circuit has held that allegations of "'persistent and unwelcome

2    physical and verbal abuse' in the workplace 'state a claim of sexual harassment, which can be

3    impermissible sex discrimination in violation of the Equal Protection Clause.'"  *Id.* at 1024

4    (quoting *Bator v. Hawaii*, 39 F.3d 1021, 1027, 1028 (9th Cir. 1994)).

5           Regarding the first step, plaintiff asserts that defendant Rakevich's actions "would lead a

6    reasonable woman to feel sexually harassed," pointing out that she alleged other facts supporting

7    that defendant Rakevich was propositioning her.  *See* Dkt. 20, at 4.  This includes Rakevich's

8    alleged history of sexual misconduct, nervous demeanor, refusal to give "a straight answer,"

9    repeated efforts to move to a more "private area" of the restaurant, and choice to meet with

10   plaintiff, when her husband "was listed as the owner" of the business.  Dkt. 20, at 4–8.

11          The Ninth Circuit has recently held that sexual harassment by public officials providing

12   social services violates Equal Protection because by definition, sexual harassment is "motivated

13   by gender."  *Sampson*, 974 F.3d at 1023 (decided September 9, 2020) (internal citation and

14   quotation marks omitted).  In *Sampson*, a woman attempting to obtain legal guardianship of her

15   niece alleged sexual harassment by the social worker assigned to her case.  *Id.* at 1015.  The

16   Ninth Circuit held that the social worker's comments on plaintiff's appearance and marital status,

17   urging her to end her marriage, inappropriately touching her, and attempting to coerce her into

18   riding in his vehicle constituted sexual harassment in violation of the Equal Protection Clause.

19   *See id.* at 1023; *see also Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1186–87 (7th Cir.

20   1986) ("[A] single discriminatory act against one individual can amount to intentional

21   discrimination for equal protection purposes.  An equal protection plaintiff therefore need not

22   prove a discriminatory policy against an entire class; discrimination against the plaintiff because

23

24

1   of her membership in the class is by itself enough." (Citations omitted.)).

2          Thus, contrary to defendants' arguments, plaintiff need not identify a statute or official

3   classification to establish her Equal Protection claim.  *See* Dkt. 14, at 9.  Under *Sampson*, it

4   would appear that defendant's alleged conduct could be sufficient to constitute a violation of

5   plaintiff's right to Equal Protection.  *See* 974 F.3d at 1024.  However, defendant is entitled to

6   qualified immunity from damages for such conduct unless plaintiff can show his actions violated

7   clearly established law *at the time*.  *Sampson* was not decided until 2020, and the alleged conduct

8   occurred in 2017.  The Court in *Sampson* explained that until 2020, case law had only addressed

9   sexual harassment in public schools, directed toward public employees in the workplace, or in

10  prisons.  *See id.*  Therefore, the Court "reluctantly agree[d] that" qualified immunity shielded

11  defendants from liability.  *Id.* at 1023.

12         It is difficult to find a case more directly on point.  Although after September 2020,

13  *Sampson* made clear "that State public officials violate our Constitution's promise of equal

14  protection when they sexually harass the people they serve," such was not clearly established

15  before September 2020.  Therefore, this Court also "reluctantly agrees" that qualified immunity

16  shields defendant Rakevich from damages on the Equal Protection claim, and this claim is

17  dismissed without leave to amend.

18         Because qualified immunity is immunity only from suit *for damages*, and since

19  defendants have not separately addressed whether claims against defendant Rakevich for

20  injunctive relief should be dismissed (*see* Dkt. 5, at 17), plaintiff's claims for injunctive relief for

21  violation of Equal Protection against defendant Rakevich are not dismissed at this time.

22                          **D.  Due Process Claims against Rakevich**

23         Plaintiff alleges that defendants violated her due process rights.  *See* Dkt. 5, at 12.

24

1    Defendants argue that this claim should be dismissed because plaintiff fails to identify a

2    protected interest for due process purposes.  *See* Dkt. 14, at 7.  The Court agrees and dismisses

3    plaintiff's due process claims.

### 1.  Procedural Due Process

5    The requirements of procedural due process do not apply to every government action that

6    adversely affects an individual and apply only to deprivations of "life, liberty, or property" as

7    defined by case law.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 570–71 (1972).  Thus "[a]

8    procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally

9    protected liberty or property interest, and (2) a denial of adequate procedural protections."

10   *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

11   Plaintiff's complaint alleges deprivation of liberty—not property—interests.  She

12   purports to identify several constitutionally protected liberty interests she claims she was

13   deprived of, but she identifies them only in vague and conclusory terms:  (1) the right to due

14   process before being deprived of fundamental rights, (2) the right to equal protection, (3) the

15   right to freedom from discriminatory regulatory practices, (4) the right to freedom from a hostile

16   and discriminatory regulatory climate, and (5) the right to be free from misuse of government

17   power.  *See* Dkt. 5, at 12.

18   At no point in her response to the motion to dismiss does plaintiff more particularly

19   identify the liberty interest at issue.  As noted, a procedural due process claim is not viable unless

20   a plaintiff identifies a protected liberty or property interest.  *See Kerry v. Din*, 576 U.S. 86, 101

21   (2015).  At present, plaintiff's procedural due process arguments are simply too conclusory to

22   state a plausible claim.  *Accord Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345, 1366 (E.D. Cal.

23   2020) (holding that conclusory allegations of violations of "enumerated and unenumerated rights

24

1    recognized in Fifth Amendment jurisprudence, including . . . freedom from discrimination with

2    respect to their fundamental rights" failed to state a plausible procedural due process claim).

3            Reading between the lines, it appears that plaintiff may be attempting to claim a protected

4    liberty interest in freedom from sexual harassment.  Plaintiff has not cited, and the Court has not

5    found, any authority for the general proposition that a plaintiff who is the victim of alleged

6    sexual harassment by a public official has necessarily been deprived of procedural due process so

7    long as a procedure is in place to address that injustice.

8            But even if plaintiff has such a protected liberty interest for procedural due process

9    purposes, she must explain how the applicable process available to her fell below the procedural

10   safeguards constitutionally required to protect that interest.  *See, e.g.*, *Brittain v. Hansen*, 451

11   F.3d 982, 1000 (9th Cir. 2006).  The Court notes that plaintiff alleges that she apparently was

12   able to avail herself of a process for appeal from the fine imposed by defendant Rakevich and

13   used this process to "bargain" for reduction of her fine.  *See* Dkt. 5, at 10.  Plaintiff does not

14   explain how this appeal process was inadequate in light of the protected interest on which she

15   relies or how this process otherwise ran afoul of the principles set forth in *Mathews v. Eldridge*,

16   424 U.S. 319, 349 (1976).  *See Brittain*, 451 F.3d at 1001 (noting that *Mathews* provides the

17   applicable test for determining how much process is due).

18           In short, plaintiff has failed to plausibly allege a procedural due process violation and her

19   claims of violation of procedural due process are dismissed.  However, because leave to amend

20   may not be futile, the dismissal is with leave to amend.

21                            **2.  Substantive Due Process**

22           "Substantive due process 'forbids the government from depriving a person of life, liberty,

23   or property in such a way that shocks the conscience or interferes with the rights implicit in the

24

1    concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting

2    *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998)).   Rights protected by substantive due

3    process are even more circumscribed than those protected by procedural due process.   For a

4    substantive due process claim, the Supreme Court has described protected, "fundamental" rights

5    as "those personal activities and decisions that this Court has identified as so deeply rooted in our

6    history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that

7    they are protected by the Fourteenth Amendment."   *United States v. Juvenile Male*, 670 F.3d

8    999, 1012 (9th Cir. 2012) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)).

9    "Those rights are few, and include the right to marry, to have children, to direct the education

10   and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to

11   abortion, and to refuse unwanted lifesaving medical treatment."   *Id.*   A plaintiff must provide "a

12   careful description of the asserted fundamental liberty interest" (*Glucksberg*, 521 U.S. at 721) or

13   "a narrow definition of the interest at stake."   *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir.

14   2007) (citing *Glucksberg*, 521 U.S. at 722).

15          Plaintiff has not provided authority for the proposition that the Supreme Court or the

16   Ninth Circuit has identified freedom from sexual harassment as a fundamental liberty interest

17   protected by the Fourteenth Amendment.   Unlike procedural due process—which provides a

18   flexible amount of protection depending on the nature of the right at issue—interests "either do

19   or do not give rise to a" substantive due process claim.   *Brittain*, 451 F.3d at 1000.   And, again,

20   the law has not yet caught up with plaintiff's understanding of a fundamental liberty interest.

21   Currently, there is no protected interest in freedom from sexual harassment for substantive due

22   process purposes.   *Accord Robinson v. Leonard-Dent*, No. 3:12CV417-PPS, 2013 WL 5701067,

23   at *8 (N.D. Ind. Oct. 18, 2013), *amended*, 2013 WL 12303991 (Nov. 21, 2013) ("Freedom from

24

1   sexual harassment is not on that list" of fundamental liberty interests); *Skoglund v. City of Foley*,

2   No. CV 05-500-KD-C, 2006 WL 8437834, at *4 (S.D. Ala. June 26, 2006) ("The court is unable

3   to find, and the plaintiff has failed to cite, any precedent that a citizen's freedom from

4   intimidation or sexual harassment of the nature described is a fundamental right protected by the

5   constitution."). Nor has plaintiff pleaded a claim of conscience-shocking behavior amounting to

6   a violation of substantive due process. Even if she attempted to amend her complaint to assert

7   such a claim, her amendment would be futile. *Accord Robinson*, 2013 WL 5701067, at *7

8   (claims of years of sexual harassment of a business owner by a state employee did not amount to

9   conscience-shocking behavior).

10      Plaintiff's substantive due process claims are therefore dismissed with prejudice and

11  without leave to amend.

12      **IV. State Law Claims**

13      As noted, plaintiff concedes to dismissal of her negligence claim, so that her remaining

14  state law claim is for intentional infliction of emotional distress/outrage. *See* Dkt. 5, at 16; *see*

15  *also Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 91 (2018) (intentional infliction of emotional

16  distress and outrage are the same).

17      In her response to the motion to dismiss, plaintiff does not address defendants' arguments

18  concerning her intentional infliction of emotional distress claims. *See* Dkt. 20, at 16. Instead,

19  plaintiff argues that she meant to include a claim under the Washington Law Against

20  Discrimination ("WLAD"), ch. 49.60 RCW. *See* Dkt. 20, at 16. Because plaintiff fails to

21  oppose defendants' arguments regarding her intentional infliction of emotional distress claim, the

22  Court deems the arguments to have merit and dismisses this claim with leave to amend. *See*

23

24

1   Local Civil Rule 7(b)(2).

2          Plaintiff requests that the Court grant her leave to amend to include a WLAD claim.  Dkt.

3   20, at 16.  Defendants oppose this request on the basis that the claim is time-barred and unlikely

4   to succeed.  *See* Dkt. 21, at 7.  As noted, leave to amend is generally liberally granted, although a

5   court has discretion to deny leave to amend where there is undue prejudice to the opposing party,

6   bad faith by the movant, futility, and undue delay.  *Cafasso*, 637 F.3d at 1058.

7          Of these factors, prejudice is the most important.  *Jackson v. Bank of Hawaii*, 902 F.2d

8   1385, 1387 (9th Cir. 1990).  And amendment is futile where "it appears beyond doubt" that the

9   amended claim will be dismissed and the parties seeking amendment could "prove no set of facts

10  in support of [their] claim[s] which would entitle [them] to relief."  *Id.* (alterations in original).

11         Here, defendants do not assert prejudice to them—the most important factor—and no

12  undue prejudice is apparent from the record.  Although they assert futility of amendment,

13  defendants simply argue that WLAD does not apply outside the employment context.  *See* Dkt.

14  21, at 7.  This is not true, as WLAD by its own terms applies to discrimination (including sexual

15  harassment) in any place of public accommodation.  RCW 49.60.215, *cited in Floeting v. Grp.*

16  *Health Coop.*, 192 Wn.2d 848, 850–51 (2019)).  And while defendants assert undue delay,

17  standing alone, that is not adequate to deny leave to amend.  *DCD Programs, Ltd. v. Leighton*,

18  833 F.2d 183, 187 (9th Cir. 1987).  Here, the matter is in its early stages, plaintiff's attorney

19  asserts that she made a mistake by not including a WLAD claim, and the ends of justice and

20  judicial efficiency are best served by allowing amendment, where plaintiff is also being granted

21  leave to amend her complaint in other regards.

22          Therefore, plaintiff's intentional infliction of emotional distress/outrage claim is

23

24

1   dismissed.  Plaintiff is granted leave to amend her complaint to assert a claim under WLAD.

2                    **SUMMARY AND INSTRUCTIONS TO THE PARTIES**

3          All of plaintiff's claims are dismissed, except her claims for injunctive relief against

4   defendant Rakevich for alleged equal protection violations.  Dismissal of the claims (1) against

5   defendant Ludwig (except as otherwise stated herein), (2) for procedural due process violations,

6   and (3) for intentional infliction of emotional distress is with leave to amend.  Plaintiff may also

7   amend her complaint to include a claim under WLAD.  Plaintiff is not granted leave to amend

8   any of her other claims.  Plaintiff shall file any amended complaint on or before **March 19,**

9   **2021**, and an answer thereto shall be timely filed.

10                              **CONCLUSION**

11         For the reasons set forth above, the Court grants the motion to dismiss (Dkt. 14).  The

12  Clerk's Office shall update the docket to reflect that any amended complaint is due on or before

13  March 19, 2021.  The Clerk's Office shall also terminate defendants Ludwig and Smith.

14         The Court further *sua sponte* strikes the deadlines set in the Court's pretrial scheduling

15  order, including the deadline for filing of a joint status report.  Dkt. 12.  Upon filing of the

16  amended complaint, the Court will issue new deadlines in this matter.

17         Dated this 4th day of March, 2021.

18

19

20         _____

21         J. Richard Creatura
           United States Magistrate Judge

22

23

24

ORDER GRANTING MOTION TO DISMISS - 16